*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. MOORE, Minor.

UNPUBLISHED
February 16, 2023

Nos. 362516; 362645
Clare Circuit Court
Family Division
LC No. 22-000022-NA

Before: GLEICHER, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

In Docket No. 362516, respondent-father appeals as of right the trial court's July 25, 2022 order of disposition. Specifically, respondent-father challenges the court's April 7, 2022 ex parte order to take the child, LM, into protective custody, as well as the July 25, 2022 order of adjudication by which the court exercised jurisdiction over LM.[1] In Docket No. 362645, respondent-mother raises issues related to the order of adjudication. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On March 29, 2022, Children's Protective Services (CPS) received a complaint involving allegations of neglect and improper supervision of LM. The complaint alleged, among other things, that: (1) respondents were abusing illegal substances and these substances were accessible to the children; (2) LM was left unsupervised and locked in her bedroom; (3) the home was unkept and dangerous for children; (4) respondent-mother had untreated mental health disorders; and (5) respondents failed to seek appropriate medical care for LM.

The trial court entered an ex parte order to take LM into protective custody and she was removed from respondents' home. Some months later, the trial court conducted a bench trial to determine whether it should take jurisdiction over LM. A number of witnesses testified about the

---

[1] The petition in this case also involved two of respondent-father's children, SM I and SM II, from a previous relationship with their mother, DS. The court ultimately granted the Friend of the Court's motion to terminate the court's jurisdiction over those two children after DS was granted sole physical and legal custody of the children. This appeal does not involve SM I and SM II.

circumstances of this case. At the end of the trial, the trial court found that, although the testimony did not establish all the allegations in the petition, there were sufficient grounds to exercise jurisdiction regarding some of the allegations. It later entered an order finding statutory grounds for jurisdiction under MCL 712A.2(b)(1) and (2). This appeal followed.

## II. EX PARTE ORDER

Respondent-father argues that the trial court erred by issuing the April 7, 2022 ex parte order to take LM into protective custody. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

An issue is preserved for appeal if it is raised in the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Respondent-father's argument on appeal is specific to the April 7, 2022 ex parte order to take the child into protective custody, but there is no indication in the record that respondent-father raised the issue in the trial court. The record does indicate that respondent-father subsequently waived the probable cause hearing, but there are no transcripts of the preliminary hearings. As such, this issue is unpreserved because there is no indication on the record presented that respondent-father objected to the removal of the child below. *Id.*

This Court reviews unpreserved issues for plain error affecting substantial rights. *Id.* at 8. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* at 8-9. "A trial court's factual findings are reviewed for clear error." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

## B. LAW AND ANALYSIS

MCR 3.963(B) governs the emergency removal of children. It states, in pertinent part:

(1) Order to Take Child into Protective Custody. The court may issue a written order, electronically or otherwise, authorizing a child protective services worker, an officer, or other person deemed suitable by the court to immediately take a child into protective custody when, after presentment of a petition or affidavit of facts to the court, the court has reasonable cause to believe that all the following conditions exist, together with specific findings of fact:

(a) The child is at substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety. . . .

(b) The circumstances warrant issuing an order pending a hearing in accordance with:

(*i*) MCR 3.965 for a child who is not yet under the jurisdiction of the court . . . .

-2-

(c) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(d) No remedy other than protective custody is reasonably available to protect the child.

(e) Continuing to reside in the home is contrary to the child's welfare.

The trial court made all of the required findings under MCR 3.963(B)(1) in its April 7, 2020 ex parte order to take LM into protective custody. Respondent-father does not argue otherwise. Rather, he argues that the testimony presented at the adjudication trial did not support *all* the allegations listed in the petition and that the court therefore erred by ordering that LM be taken into protective custody on April 7. However, the testimony which respondent-father relies on in his appeal had not been presented at the time of the emergency removal order. At any rate, MCR 3.963(B)(1) allows the trial court to issue an order to immediately take a child into protective custody after presentment of a petition or affidavit of facts. This argument is without merit.[2]

## III. ADJOURNMENT

Respondent-mother argues that the trial court erred by denying her request for an adjournment on the second day of the adjudication trial. We conclude that any error in failing to adjourn the trial was harmless.

### A. STANDARD OF REVIEW

This Court reviews a ruling on a motion for a continuance for an abuse of discretion. *Utrera*, 281 Mich App at 8.

### B. LAW AND ANALYSIS

Respondent-mother argues that the trial court erred by not adjourning the trial until a witness became available "based on MCR 2.506" because the witness's testimony was critical to respondent-mother's defense. Her argument is premised on the anticipated testimony of a doctor, whom she believed would negate the allegations of medical neglect. The doctor appeared for the

---

[2] We also reject respondent-father's argument that, without the order to take LM into protective custody, the adjudication trial would not have been necessary. Assuming that LM should not have been removed, there was no undermining of the adjudication order. Releasing LM to respondent-father instead of ordering removal would not have precluded the court from holding a preliminary hearing to determine whether to authorize the filing of the petition upon a finding of probable cause that one or more of the allegations in the petition were true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b). *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019); see also MCL 712A.13a(2); MCR 3.965(B)(12). Respondent-father waived a determination of probable cause at the preliminary hearing.

first day of trial, but was not called to testify. The doctor did not appear for the second day of trial. Respondent-mother moved for an adjournment to allow the doctor to appear, but the trial court denied the motion.

In challenging this denial on appeal, respondent-mother does not acknowledge the court rules governing child protective proceedings, specifically that a motion to adjourn must identify good cause, and the court's ruling should consider the best interests of the child. MCR 3.923(G)(1) and (2). See *Utrera*, 281 Mich App at 10. "In order for a trial court to find good cause for an adjournment, 'a legally sufficient or substantial reason' must first be shown." *Id*. at 11 (citation omitted). In the general civil context, the absence of a witness constitutes good cause for an adjournment, but "only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCR 2.503(C)(2).

Although respondent-mother argues that she subpoenaed the doctor to contest the allegation that respondent-mother did not properly care for LM in August 2021 when LM was hospitalized for an infected boil, she has not provided specific evidence the witness would have proffered that would have made a difference in the outcome of the case. Thus, she has failed to satisfy MCR 3.923(G)'s good cause requirement. Further, she has not shown that an adjournment would have been in the child's best interests as required under MCR 3.923(G)(2). Additionally, by failing to identify what specific evidence the witness would have proffered, respondent-mother has failed to show that the evidence would have been material under MCR 2.503(C)(2).

Further, any possible error regarding the denial of the request for an adjournment would be harmless under the circumstances. MCR 3.902(A); MCR 2.613(A).[3] Testimony was presented on the first day of trial that CPS performed an investigation at the time of LM's hospitalization for the infected boil and that respondent-mother was not charged with medical neglect, nor did CPS remove LM from respondent-mother's care at that time. The trial court found that "very few of the paragraphs in the petition" were proven. The court said that some sections "were proven by the facts as set forth by the witnesses." The court's findings, however, did not mention any witness testimony regarding the child's boil infection or any medical neglect. Therefore, it is clear that the court did not find that there was a substantial risk of harm to the child when in respondent-mother's care because of medical neglect.

---

[3] MCR 3.902(A) provides that in child protective proceedings, "[l]imitations on corrections of error are governed by MCR 2.613." MCR 2.613, in turn, outlines a harmless-error standard:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice. [MCR 2.613(A).]

## IV. STATUTORY GROUNDS

Respondents, raising separate arguments, argue that the trial court clearly erred by concluding that sufficient evidence was presented to exercise jurisdiction over LM under MCL 712A.2(b)(1) and (2). We disagree.

### A. STANDARD OF REVIEW

This Court reviews the trial court's exercise of jurisdiction "for clear error in light of the court's finding of fact." *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (citation omitted). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004) (citations omitted). For a decision to be clearly erroneous, it must be "more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

### B. LAW AND ANALYSIS

The adjudication phase of a child protective proceeding determines "whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders[.]" *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). For the trial court to exercise jurisdiction over a minor child, the petitioner must establish by a preponderance of the evidence a statutory basis for jurisdiction alleged in the petition. *Id*. MCL 712A.2(b) provides, in relevant part, that the trial court has the following authority and jurisdiction:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . .

When stating its findings on the record, the court did not specifically state under which statutory ground it found jurisdiction. Rather, the court detailed the evidence on which it relied to support its finding that statutory grounds to exercise jurisdiction over LM existed.

With respect to respondent-mother, there was testimony that in March 2022 LM was left alone inside the house, and, that on different another date in March respondent-mother did not respond to continuous knocks on the door when LM was returned to the home by her grandfather. The trial court noted that respondent-mother admitted growing marijuana in the yard and that the marijuana was accessible to the child. In addition, there was evidence that respondent-mother was

involved in the processing and jarring of marijuana inside the home while LM was in the home. There was also evidence that in February 2022, an eyeglass case containing a pipe and lighters fell out of respondent-mother's pocket. On the same day, respondent-mother was acting fidgety, anxious, and giddy. The court also indicated that respondent-mother had a history of mental health issues, that she made irrational statements and exhibited paranoia and erratic behavior within two months of the petition being filed, and that she exhibited erratic and inappropriate behavior during the trial. The court found that respondent-mother's behavior "gives some weight to the idea that there are perhaps some mental or emotional health issues that need to be addressed." Although respondent-mother correctly points out that she voluntarily admitted herself to an inpatient behavioral health program for a week in 2021, testimony was presented that she continued to display erratic behavior following her release, that her behavior did not improve, and that she was no longer prescribed medication for her postpartum depression. As such, there is no clear error in the trial court's factual findings.

With respect to respondent-father, the court found, as it did with respect to respondent-mother, that marijuana was being grown in respondents' yard and that it was accessible to LM. The court noted that respondent-father used marijuana two or three times a day and that he thought it had no effect on him, and that respondent-father was in possession of methamphetamines in March 2022 and was criminally convicted as a result of that possession. The court also noted that less than a month after respondent-father gave SM II a backpack containing a torch and a container containing apparent residue, respondent-father was convicted of possession of methamphetamines and that this "certainly gives weight to the idea that the father not only had drugs, but that he made them accessible to his children."

The trial court found that there was a danger to LM while in the care of respondents, and that there existed a substantial risk of harm based on drug use in the home, drugs being grown in the yard, and respondent-mother's mental health. Although the trial court cited to MCL 712A.2(b)(1), the court's findings are inconsistent with that subsection of the statute because it refers to a "substantial risk of harm to [the child's] *mental* well-being." (Emphasis added.) Nevertheless, the order of adjudication indicates that the statutory grounds to exercise jurisdiction over LM also included MCL 712A.2(b)(2), which refers to an unfit home environment "by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of the parent[.]" It is well-established that a court speaks through its written orders rather than its oral pronouncements. *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015). Given the deference owed to the trial court's role in assessing witness credibility, *BZ*, 264 Mich App at 296-297, we are not firmly convinced that the court clearly erred by finding by a preponderance of the evidence that DHHS established grounds for jurisdiction over the child in connection with both respondents under MCL 712A.2(b)(2).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-6-